Maxine P. BROMBERG, Administratrix of the Estate of Jack L. Berg, Deceased, Plaintiff,

v.

Arthur F. MOUL, Defendant.

Civ. A. No. 6238.

United States District Court
W. D. New York.

Dec. 31, 1957.

Finck & Huber, Buffalo, N. Y., for plaintiff.

Michael J. Montesano, Buffalo, N. Y. (Louis Z. Almasi, Donald P. Coppola, James A. Garvey, Buffalo, N. Y., of counsel), for defendant.

MORGAN, District Judge.

The above action was brought by the legal representative of the Estate of Jack L. Berg to recover $7,623 on account of an alleged sale of three grinders, with interest from April 1, 1952; and the additional sum of $1,126.68 on account of expenses incurred in connection with the said sale.

The action was tried before the late Chief Judge of the Western District of New York, the Honorable John Knight, at Buffalo, New York, on March 3rd and March 4th, 1955. Thereafter, this matter was argued, submitted and resubmitted.

Upon a motion for summary judgment, this Court required a transcript of the testimony of the trial before the late Judge Knight. Months passed, while argument as to who should pay for the record was decided by a direction each should pay one-half thereof. There are many references to a definite contract; (record, pages 34, 37, 39). A down payment of $1,000 was made by the defendant (record, page 43, folios 1 through 10). The defendant took a demonstration of the grinders, while under power (record, page 45, folios 1 through 3).

Succinctly, the plaintiff's contention is that the defendant accepted these machines after inspection by the defendant and his agent, McDonald Machinery Company of St. Louis, Missouri. The exhibits remained with the late Judge Knight until on or about April 18, 1955 when his file, which was made available to the writer of this opinion on March 26, 1956, indicated the exhibits were returned to the attorney of record for the defendant, and were received by this Court on or about May 27, 1957. Plaintiff and the decedent, Jack L. Berg, were residents of the City of St. Louis, Missouri, at the time the contract was made, as was the plaintiff at the time of the trial.

The alleged contract was made by the defendant with Jack Berg Machinery & Equipment Company. Upon the death of Jack Berg, the plaintiff was appointed administratrix of his estate and was authorized by the Court to continue the operation of said decedent's business, known as the Jack Berg Machinery & Equipment Company.

The defendant sets up in his answer three separate defenses: That the plaintiff warranted that said grinders were reconditioned and ready for immediate use and that this was not true; that the sale of such grinders was not to be complete until they had been inspected and found to be suitable for the purposes for which the purchase was made; and that it was agreed that if the grinders were unsatisfactory in any respect, either to the defendant or to his prospective purchaser, the defendant had the right to refuse to accept said goods; and that the defendant found such grinders to be unsatisfactory and not suitable for the purposes for which they were purchased.

Initially it seems advisable to consider several questions of law which have been raised. It seems to be the position of the defendant that Missouri law does not apply in this case. Clearly, this cannot be the fact as the sale itself was consummated in the State of Missouri. From the written documents in evidence, there can be, in my opinion, no doubt as to the right of the plaintiff to recover in this suit. Independent of these documents, testimony of the de-

fendant is so contradictory and so apparently inconsistent as to lead the Court to give it little belief.

On December 21, 1951, defendant, by telephone, asked a quotation on grinders. On December 23rd, defendant wired Berg to reserve three grinders until the following Saturday. On December 26, 1951, defendant, by telephone, asked about the equipment. On December 26th, Berg wrote defendant describing the grinders. On December 27th, defendant telegraphed Berg:

"Please Enter Order Two Bridgeport Face Grinders and One Diamond Machine as Inspected Last Week Sending Two Thousand Dollars Also a Thousand Next Week Desire Pay Balance COD Kindly Wire Me Speed Horsepower Motor Required and See if One Available St. Louis Also Send Sketch or Sample Missing Grinding Segment Will Obtain One Set if No Spares Available. Customer Will Need Grinders Soon Kindly Contact McDonald to Arrangement for Prompt Delivery to Him Wire Acknowledgment Happy New Year"

In a letter from Berg to the defendant under date of December 28th, Berg acknowledged the purchase of the three grinders for the total sum of $12,500 net:

" * * * delivered to McDonald Machinery, terms as per wire of the above date—$3000.00 down and balance C.O.D. McDonald Machinery is to do the reconditioning work as per your private agreement with them."

Under date of December 31, 1951, defendant wrote plaintiff as follows:

"In accordance with our agreement I enclose a check for $2000 to cover down payment on the three grinders covered by your letter of the 28th. * * * total price $12500. I will send you another $1000 in a few days as I have a lot of money outstanding. The terms on the balance will be COD."

"As you may know I arranged with McDonald to buy a 40HP motor and starter. Will you please contact him at once and arrange a time most agreeable to get these machines into his shop for reconditioning."

Under date of January 3, 1952, Berg wrote defendant thanking him for the order and answering an inquiry as to the number of segments in the grinding wheel on one of the grinders. Under date of January 6, 1952, defendant wrote Berg in regard to defendant's providing certain equipment. Under date of January 11, 1952, defendant telegraphed Berg asking for floor plans with bolt hole locations "so proper foundations can be prepared". On January 16th, defendant telegraphed plaintiff asking for further information and this was fully answered by letter from Berg under date of January 18, 1952. Under date of February 14, 1952, defendant sent a long telegram to Berg with regard to the reconditioning. Under date of February 18, 1952, defendant again telegraphed plaintiff with regard to reconditioning and inspection.

There are many other telegrams and letters between Berg and the defendant, the sum of which supports the claim of the plaintiff. It is to be borne in mind that the defendant employed McDonald to recondition these machines and, further, that they were removed to another location and McDonald Machinery did the reconditioning. One of the three grinders was delivered and the agreed price paid therefor. On March 17, 1952, the defendant wired Berg that:

"Ordinance Contractor Has Cancelled Grinder Order for 3 Machines. This Situation beyond My Control. Cancellation and Immediate Refund of Funds Allocated by Government Requested. None of Us Can Afford Controversy * * *"

Under date of March 18th, Berg wrote defendant asking for the payment of the

$1,000 down payment due and for shipping instructions. Prior to April 10, 1952, defendant sent a representative to examine the machines. The report calls attention to certain requisite parts and he says with reference to these that they "are all things which can be done fairly easily with the machines in their present position and does not present a major problem." Later on April 21, 1952, defendant wired Berg asking that the conditioning of the "diamond grinder" be expedited.

Under date of May 3rd, defendant wrote Berg, in part, saying:

"* * * Have so much money tied up in machinery right now that I must ask for your indulgence. fore shipment—balance cash against documents * * * I may be able to send some Rogers grinder inquiries your way if you are interested. Would like to see you make some commissions. Are you interested?"

On May 31, 1952, defendant remitted for the balance on the diamond grinder, which was sold, and in his letter of that date, he wrote "I appreciate Lee Mcdonalds working with you and for his reasonable charges."

Under date of June 11, 1952, defendant telegraphed:

"* * * My Customer Wishes to Cancel Two Other Grinders * *"

It appears that after sending the foregoing communications, the defendant attempted to sell the remaining two grinders. Under date of September 16, 1952, defendant sought to procure reduced prices. In a telegram of January, 1952, defendant asked McDonald to "arrange to recondition Bridgeport with motor as soon as possible." The exhibits show without question that McDonald was employed by defendant to recondition these grinders. It does not appear in the record that there is any clear cancellation of the contract with Berg. The grinders were sold "as is" and the record shows that the defendant had the grinders inspected before the agreement became effective.

I find that plaintiff is entitled to recover the balance due under the agreement on the two grinders and certain expenses incurred by the plaintiff in connection with the grinders, less $5,250 paid on account of purchase price, and $280.05 paid on account of expenses, or the following items, as allowed:

| | |
|---|---|
| Sale price of machines | $12,500.00 |
| Repair expenses | 190.90 |
| Rigging, etc. expenses | 339.00 |
| Storage charges | 704.00 |
| | $13,733.90 |
| | 5,530.05 Less amounts paid |
| | $ 8,203.85 Total |

Prior to the trial of this case and after the Amendment of Defendant's Answer, the plaintiff moved to dismiss two of the alleged defenses set forth in the Answer. The Court denied the motion. Neither of such alleged defenses have been established here. Some mention of these grinders with respect to the OPS regulations appears in the record but there is no proof of any violation of the OPS regulations. That disposes of one of the motions.

The second motion was directed to the allegation that no invoice of the goods had been served. However, that is not fatal to the plaintiff's claim. Such an invoice could be served at the time of delivery of the goods. That disposes of the second of such motions.

The defendant has introduced in evidence a letter under date of December 27, 1951 which purports to relate to the terms of the agreement. It contains this statement:

" * * * It is understood that there will be a reasonable charge for reconditioning, as per our phone talk with you and Mr. McDonald * * * and that all machines for prompt delivery after acceptance upon inspection."

The plaintiff denies receipt of this letter. A communication of a prior date states that these grinders had been inspected. There is also in evidence a telegram under date of April 12, 1952 which purports to confirm a talk cancelling the order for the two Bridgeport grinders on the ground that they were not reconditioned, as ordered. Plaintiff denies receipt of this telegram, and in the prior examinations of the defendant before trial, there is no mention by the defendant of this telegram.

In view of the decision above indicated, it makes no difference whether this notice of cancellation was given. There can be no question either, under the laws of the State of Missouri or under the laws of the State of New York, that sale of these grinders was closed. There is no question in the mind of the Court that the plaintiff lived up to the conditions of the agreement for the sale of these grinders and that there was such a sale on or about December 27, 1951.

A complete and thorough review of the pleadings, the depositions of the defendant and the official record indicates clearly that the defendant made a binding contract to purchase in the hope and expectation that he could resell each of the machines so purchased from the plaintiff. When his customer cancelled, he attempted to cancel. He may not escape the legal consequences of his acts, despite the hardship which the unexpected failure to resell might entail.

Prepare findings, and submit order on notice.